# EXHIBIT 4

| Office of Professional Responsibility **FINAL REPORT** | **1. File Number:** ██████ | **2. Date:** October 21, 2011 |
|---|---|---|
| | **3. File Title:** Ken Fuentecilla (Forensic Chemist) | |

| **4. Allegation:** | Inattention to Duty, Failure to Follow Written Instructions and Falsification of Official Documents | |
|---|---|---|
| **5. Inspectors:** ██████████████ | **6. OPR Team/Field Office:** Newark, NJ Field Office | |

### PART I – APPROVALS

| **7. Submitted By: (Title, Signature and Date):** ████████ 12/5/11 | **8. Reviewed By (Title, Signature and Date):** ████████ 12/5/2011 |
|---|---|
| Inspector ██████ | Senior Inspector ████ |
| **9. Approved By (Title, Signature and Date):** ██████████████████ 12/7/11 | |
| Deputy Chief Inspector ██████ | |

### PART II – NARRATIVE

1.   This DEA, Office of Professional Responsibility (OPR) investigation was initiated on December 1, 2010, pursuant to a memorandum dated December 1, 2010, from Chief ██████ Health Services Unit, to Deputy Assistant Administrator ██████, Forensic Science, entitled "Report of Positive Drug Test." In the memorandum, Chief ██ referred to notification from Pembrooke Customized Employment Screening Solutions, regarding Forensic Chemist (FC) Ken Fuentecilla, Northeast Regional Laboratory (NERL) testing positive for methamphetamine and amphetamine during a random drug test administered on November 16, 2010. The initial test given was invalid due to the testers from Quest Diagnostics not "splitting" the sample which violated Health and Human Services (HHS) mandatory guidelines for testing federal employees. Although the specimen was a non-negative, it could not be confirmed because the collection did not have the second sample which would be available to the subject who produced the non-negative result. Another drug test was given to FC Fuentecilla on December 17, 2010, where the results were "too diluted" to test and a third test was administered on January 6, 2011, in which FC Fuentecilla tested negative. This OPR investigation was initiated to determine the facts concerning the allegations of a Failed Random Drug Test. Investigative efforts surrounding FC Fuentecilla's work product initiated additional allegations of Inattention to Duty, Failure to Follow Written Instruction and Falsification of Official Documents. **[TAB 1]**

---

OPR Final Report
(June , 2001, TBP)

**DEA SENSITIVE**
**Drug Enforcement Administration**

Page 1 of 20

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

| Office of Professional Responsibility | **1. File Number:** ▮▮▮▮▮ | **2. Date:** October 21, 2011 |
|---|---|---|
| **REPORT OF INVESTIGATION** *(Continuation)* | **3. File Title:** Ken Fuentecilla (Forensic Chemist) | |

2.    On December 2, 2010, Inspectors interviewed FC Fuentecilla regarding his failed random drug test in which he tested positive for methamphetamine and amphetamine (TAB 2A). FC Fuentecilla had been assigned to the NERL since 2002.

3.    FC Fuentecilla stated he was selected for a random drug test on November 16, 2010, and assumed it was because he had been working on some "high purity" methamphetamine exhibits during the time of the random drug test. FC Fuentecilla notified Inspectors that he was working on a "Chicago case" and the drugs being analyzed were methamphetamine which was 98% pure. When asked if the methamphetamine he was working on was "crystal methamphetamine," FC Fuentecilla stated "Well, I guess that, crystal methamphetamine." FC Fuentecilla stated he had to scrape "the crystals" and it looked like it was "drying." [NOTE: The exhibit FC Fuentecilla was referencing was later identified as ▮▮▮▮, Exhibit #38 (TAB 2B), which contained methamphetamine hydrochloride and for the remainder of this report will be identified as Exhibit #38.]

4.    FC Fuentecilla stated he removed Exhibit #38 from the vault on November 5, 2010, and "just" closed the exhibit before he met with Inspectors. FC Fuentecilla stated, "I opened it up on one day and then took the net weight, and then I started working on other exhibits and then started doing the analysis on the day of, on the sixteenth." Later in the interview, when asked if he analyzed Exhibit #38 prior to November 16, 2010, FC Fuentecilla stated, "I think I, well yeah, I opened it up on the, either I opened it up on 15th and analyzed it on the 16th, because, I have to look back at my notes." [NOTE: A Forensic Chemist Worksheet (DEA-86) was what FC Fuentecilla referred to as "my notes" (TAB 2B).]

5.    FC Fuentecilla admitted he took out Exhibit #38 on November 5, 2010, and then retracted his answer and stated, "I don't remember the first day I took it out." FC Fuentecilla stated, "It must have been before November 5th." FC Fuentecilla stated, "sometimes I took exhibits out and they stay in my box." FC Fuentecilla stated, "sometimes I even take the net weights and then put them back into the box and work on other exhibits." FC Fuentecilla stated Exhibit #38 had "actually been cut open in my box since I took it out, since I, you know, since I took it out from the vault."

6.    FC Fuentecilla stated a chemist should not have an exhibit out of the vault more than 20 days and a chemist should "just return it" if he could not work on it within the 20 day timeframe and retrieve the exhibit again from the vault. FC Fuentecilla stated regarding the cases from Chicago, he was not reminded to return the exhibits and "they" (referring to NERL management) remind the chemists of "New York stuff (referring to New York Drug Exhibits)." FC Fuentecilla stated having Exhibit #38 in his possession until this date was a violation of policy. FC Fuentecilla stated he did not return it because he started working on other exhibits and "kind of put that on the side." FC Fuentecilla stated other exhibits came out of storage that needed to be analyzed right away, "so, this one kind of got put on the back burner as far as priority-wise."

7.    When asked why it was taking so long for him to analyze Exhibit #38 from Chicago, FC Fuentecilla stated, "Well, the analysis doesn't take too long." FC Fuentecilla explained if there were no "directions" regarding the analysis of an exhibit it should only take "two or three days" to complete the work on the exhibit. FC Fuentecilla stated even though he took Exhibit #38 out on November 5, 2010, he only "opened"

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

| Office of Professional Responsibility | 1. File Number: ▮▮▮▮▮ | 2. Date: October 21, 2011 |
|---|---|---|
| **REPORT OF INVESTIGATION** *(Continuation)* | 3. File Title: Ken Fuentecilla (Forensic Chemist) | |

the exhibit on "November 15, 2010, or November 16, 2010." [NOTE: The random drug test was conducted on November 16, 2010.] FC Fuentecilla stated his supervisors designate "priority" exhibits and priority is given to those exhibits coming up for court. FC Fuentecilla stated "Expedite Letters" were also present to designate "priority" exhibits. FC Fuentecilla stated an "Albany and Connecticut" case was the cause of a back log due to the cases being identified as a "priority." FC Fuentecilla stated that when a chemist had exhibits out past the 20 days it may reflect poorly on their yearly evaluation.

8.    FC Fuentecilla stated that when he tested Exhibit #38, he scraped off each layer of crystals and placed the crystals into a beaker and admitted to doing this test prior to November 16, 2010; however, did not remember the actual date and had to refer to his DEA-86. FC Fuentecilla then placed the scraped crystals into a substitute bag and placed the substitute bag back into the heat sealed envelope and returned the entire exhibit into his "lock box" where it remained.

9.    FC Fuentecilla stated that prior to November 16, 2010, the only exhibits containing amphetamine or methamphetamine were the exhibits he was working on from Chicago. FC Fuentecilla stated he worked on another case from Chicago, which was later identified as ▮▮▮▮▮, Exhibit #5 (TAB 2C). FC Fuentecilla stated he had to separate three grams from Exhibit #5 for a "special program" and it was part of protocol.

10.    FC Fuentecilla stated chemists were only required to wear a protective mask if the exhibit was large. FC Fuentecilla stated he did not wear any protective equipment and stated, "they (referring to the exhibit) seemed like unable to get airborne, right." FC Fuentecilla stated, "I didn't think they were going to be, it was going to be too much of an exposure." FC Fuentecilla then referred to the size of the exhibit and stated, "if it's one heat seal it's usually not a large exposure compared to like the bulks that we have."
FC Fuentecilla further stated protective equipment was not required, other than goggles and a lab coat, and it was mostly up to the "chemist to protect themselves." FC Fuentecilla stated he did not understand his exposure and could only think of the aforementioned exhibits where he may have been exposed.
FC Fuentecilla stated he was not currently using methamphetamine or amphetamine.

11.    FC Fuentecilla stated when the Pembrooke Occupational Health medical reviewer, Doctor (Dr.) ▮▮▮▮▮ ▮▮▮▮▮ contacted him, he was more concerned of the positive test being a "health issue" versus a "user issue." Dr. ▮▮▮▮▮ asked if FC Fuentecilla "hung out" with people who were users of methamphetamine. FC Fuentecilla stated he thought Dr. ▮▮▮▮▮ did not understand he was a chemist nor did FC Fuentecilla explain to Dr. ▮▮▮▮▮ his position was a Forensic Chemist. Dr. ▮▮▮▮▮ told FC Fuentecilla to notify his supervisor of the positive test because the result would be reported to DEA. FC Fuentecilla stated he thought testing positive on a drug test was a "normal" thing. According to FC Fuentecilla, Dr. ▮▮▮▮▮ asked him if he was taking diet pills and FC Fuentecilla stated he was not taking any medication to include diet pills.

12.    FC Fuentecilla stated he had no idea of how he tested positive for methamphetamine and amphetamine. FC Fuentecilla stated he had never "used" methamphetamine and did not have any friends who "use" methamphetamine. FC Fuentecilla stated the only reason he could have tested positive was while he was working with the aforementioned exhibits through cross-contamination and the two exhibits

OPR Final Report
(June 2000, TBP)

**DEA SENSITIVE**
**Drug Enforcement Administration**

Page 3 of 20

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

| Office of Professional Responsibility | 1. File Number: ▮▮▮▮▮▮ | 2. Date: October 21, 2011 |
|---|---|---|
| **REPORT OF INVESTIGATION** *(Continuation)* | 3. File Title: Ken Fuentecilla (Forensic Chemist) | |

discussed were the only methamphetamine exhibits he had worked on during the weeks prior to the random drug test on November 16, 2010.

13.   FC Fuentecilla stated he waited until Supervisory Chemist (SC) ▮▮▮▮▮▮▮▮, NERL, returned from lunch to address his positive test result. FC Fuentecilla stated he did not have a chance to speak with SC ▮▮▮▮ because upon ▮▮▮ return, ▮▮▮ was already with NERL Director ▮▮▮▮▮▮▮▮, FC Fuentecilla stated he did not report his failed drug test to SC ▮▮▮▮ immediately because he "was calling a doctor." FC Fuentecilla focused on the random drug test being more of a safety/health issue than to identify employees utilizing illegal substances.

14.   FC Fuentecilla stated, "it made sense" he tested positive because he was working on "high purity" methamphetamine. FC Fuentecilla still questioned his exposure and did not see a reason to fill out a DEA form CA-1 to document an exposure to any substance. FC Fuentecilla stated, "whatever we analyze is in our system." FC Fuentecilla stated, "I thought after a certain threshold, you know, they kind of flag you." FC Fuentecilla stated he was hoping to be re-tested to see if he was still being "exposed to this stuff so he could be more careful." FC Fuentecilla was asked if he would submit to a polygraph and he stated, "No, they said that we should not be saying yes to a polygraph because they are not a hundred percent."

15.   FC Fuentecilla was allowed to retrieve his DEA-86 to clarify answers for Inspector's questions. FC Fuentecilla stated the first methamphetamine exhibit worked on was ▮▮▮▮, Exhibit #5, laboratory number ▮▮▮▮ FC Fuentecilla stated he removed Exhibit #5 from the vault on October 27, 2010, and completed the analysis on October 28, 2010. FC Fuentecilla agreed with inspectors he was not exposed to Exhibit #5 after October 28, 2010.

16.   The second exhibit FC Fuentecilla analyzed was ▮▮▮▮ Exhibit #38. FC Fuentecilla stated Exhibit #38 was in a heat sealed envelope which contained layers of wet paper towels with crystalline material within each layer. FC Fuentecilla stated he "cut open" Exhibit #38 for the first time on November 16, 2010. FC Fuentecilla stated, "Yeah, I remember opening it up before the drug test." FC Fuentecilla stated that prior to cutting open Exhibit #38 on November 16, 2010, the exhibit remained in his "lock box."

17.   FC Fuentecilla stated he reported to work at 8 a.m. and his drug test occurred between 10 a.m. and 10:30 a.m. FC Fuentecilla claimed he opened the exhibit between 8 a.m. and 10 a.m., prior to his random drug test. [NOTE: According to his DEA-86, there were no times documented as to when he actually opened Exhibit #38.] FC Fuentecilla stated he "closed up" Exhibit #38 on December 2, 2010, prior to meeting with OPR Inspectors. **[TAB 2]**

18.   On December 2, 2010, SC ▮▮▮▮ was interviewed and stated ▮▮ had directly supervised FC Fuentecilla for approximately one and a half months. SC ▮▮▮▮ stated on November 16, 2010, between 8 a.m. and 8:30 a.m., the NERL was notified, by electronic mail (email), the chemists were going to be drug tested.

**DEA SENSITIVE**
**Drug Enforcement Administration**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

| Office of Professional Responsibility **REPORT OF INVESTIGATION** *(Continuation)* | 1. File Number: ███ | 2. Date: October 21, 2011 |
|---|---|---|
| | 3. File Title: Ken Fuentecilla (Forensic Chemist) | |

19.   SC ███ stated that on December 2, 2010, SC ███ stated ███ was notified by Director ███ FC Fuentecilla failed the drug test which was administered on November 16, 2010. SC ███ stated FC Fuentecilla had an ample amount of time to notify ███ of his failed drug test prior to ███ notification. Director ███ SC ███ and FC Fuentecilla met in ███ office to discuss the drug test. According to SC ███ FC Fuentecilla stated he received an e-mail informing him he failed the drug test and he did not notify her. SC ███ stated FC Fuentecilla did not understand how he tested positive and provided no explanation during the initial interview. Director ███ left SC ███ s office and SC ███ was able to speak with FC Fuentecilla regarding the issue. SC ███ stated FC Fuentecilla told ███ he was not using drugs and did not understand how he tested positive. After a few moments, FC Fuentecilla began coming up with possible explanations for the positive test.

20.   FC Fuentecilla told SC ███ he wore a certain type of pants and shoes to work every day and he "probably" was wearing them the day of the test. FC Fuentecilla told SC ███ he did not wash his hands prior to taking the drug test. FC Fuentecilla stated he was analyzing "Chicago" exhibits containing methamphetamine.

21.   SC ███ stated that after the conversation with FC Fuentecilla, ███ reviewed the NERL databases regarding assigned exhibits. FC Fuentecilla was not assigned any NERL methamphetamine cases during the timeframe of November 1, 2010, through November 16, 2010. SC ███ contacted Evidence Technician (ET) ███ to have ███ run the Laboratory Evidence Management System (LEMS) database for Chicago Division exhibits (TAB 3A). ET ███ informed SC ███ that FC Fuentecilla had one Chicago methamphetamine exhibit in his possession and retrieved the exhibit on November 5, 2010. [NOTE: FC Fuentecilla was referring to Chicago case ███ Exhibit #38.] SC ███ stated FC Fuentecilla's pattern of analysis on this exhibit was "a bit strange" because he took the exhibit out of the vault on November 5, 2010, and then returned it to the vault on November 18, 2010, to reset the time and was currently working on the exhibit.

22.   SC ███ stated according to NERL policy, Laboratory Operations Manual (LOM), Chapter 7303.4 (TAB 3B), a chemist was allowed 30 days for a piece of evidence to be out of the vault. At the 30 day mark, the chemist was notified they have a piece of evidence out for too long and it needed to be returned to the vault. SC ███ stated Chicago Division exhibits had different guidelines. SC ███ stated FC Fuentecilla's retention of Exhibit #38 was "not normal" and some chemists may take out too many exhibits and cannot find time to analyze them because of unexpected issues and return the exhibits to the vault. According to a brief data review by SC ███ stated that he retrieved Exhibit #38 on November 18, 2010, and completed all of the analytical tests on December 1, 2010, within a two hour timeframe. Exhibit #38 was then returned to the vault on December 2, 2010.

23.   SC ███ stated on FC Fuentecilla's DEA-86 (TAB 3C), FC Fuentecilla indicated he received Exhibit #38 from the vault on November 16, 2010, which was contradictory to the LEMS report which electronically documented he removed Exhibit #38 on November 5, 2010. On FC Fuentecilla's DEA-86, FC Fuentecilla wrote he opened exhibit #38 on November 16, 2010, no time was indicated, and he sealed the exhibit on December 2, 2010. According to ███ FC Fuentecilla wrote "November 17, 2010," on a

**DEA SENSITIVE**
**Drug Enforcement Administration**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

| Office of Professional Responsibility **REPORT OF INVESTIGATION** *(Continuation)* | 1. File Number: | 2. Date: October 21, 2011 |
| --- | --- | --- |
| | 3. File Title: Ken Fuentecilla (Forensic Chemist) | |

composite bag he transferred ground material into where he also wrote his initials. SC      stated, "it is very strange why someone would take a piece of evidence out and have possession of the evidence for that length of time."

24.   SC      stated per LOM, Chapter 7302.53 (TAB 3D), the date written on the DEA-86 must be the date the chemist received the piece of evidence from the ET who documented the retrieval via LEMS. SC      stated FC Fuentecilla incorrectly wrote November 16, 2010, when he should have written November 5, 2010, which was the day documented electronically, through LEMS.

25.   SC      stated it would have been common practice for a chemist to "batch" multiple methamphetamine exhibits they had in their possession at the same time. [NOTE: "Batching" exhibits occurred when a chemist had three or four exhibits of the same type and prepared for one analysis instead of prepared for each individually.] FC Fuentecilla had two separate methamphetamine exhibits in his possession at the same time, and could have "batched" the exhibits. SC      stated an Immigration and Customs Enforcement (ICE), Philadelphia Division case      was started on November 18, 2010, and completed on November 19, 2010, and a Chicago Division case      , Exhibit #38 was in FC Fuentecilla's possession and opened on November 16, 2010, but no tests were run until December 1, 2010.  SC      stated "not batching" exhibits was not against policy, but it would "have made sense" in this situation to batch the exhibits.

26.   SC      stated Chicago Division cases were not a "priority" for FC Fuentecilla and none of the Chicago Division exhibits were expedited requests.  SC      stated FC Fuentecilla's priority was to work on the exhibits assigned to him by the NERL.  SC      stated FC Fuentecilla missed several of his 30 day turnaround time deadlines he was allotted for an exhibit, and was consistently completing exhibits at the 29 day mark.  SC      stated the Chicago cases were assigned to FC Fuentecilla prior to   supervision and was unaware he had those exhibits.  SC      stated Chicago exhibits were not on the NERL LEMS database and therefore could not be tracked by

27.   SC      stated according to LOM, Chapter 7302.41 (TAB 3E), if the FC's weight differed from the submitting Special Agent (SA), Task Force Officer (TFO) or Diversion Investigator (DI) reported weight by more than two grams or .02% of the gross weight, the weight must be witnessed by the supervisor or another FC prior to breaking the seal.  SC      stated the Chicago case      , Exhibit #5, the SA recorded the gross weight as 140.2 grams and the weight recorded by FC Fuentecilla on his DEA-86 was 130.4 grams on August 24, 2010, which was a ten gram discrepancy. FC Fuentecilla did not utilize a witness prior to breaking the seal and the integrity of the actual weight could not be determined regarding Exhibit #5 which was a methamphetamine exhibit.

28.   SC      stated SC      supervised FC Fuentecilla prior to   and   was part of management meetings where disciplinary actions were discussed to "straighten out his behavior." SC      stated FC Fuentecilla was a completely different person from when he was first hired. SC      placed FC Fuentecilla on leave restriction because he would "call in" erratically and tardiness was an issue.  SC      stated   had to counsel FC Fuentecilla for his tardiness and reminded

**DEA SENSITIVE**
**Drug Enforcement Administration**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

| Office of Professional Responsibility | 1. File Number: ▮▮▮ | 2. Date: October 21, 2011 |
|---|---|---|
| **REPORT OF INVESTIGATION** *(Continuation)* | 3. File Title: Ken Fuentecilla (Forensic Chemist) | |

FC Fuentecilla of his work hours. On November 16, 2010, SC ▮▮▮ had FC Fuentecilla sign a memorandum (TAB 3F), titled, "Tardiness Issues," regarding his attendance record and would be considered Absent Without Leave (AWOL). On November 18, 2010, FC Fuentecilla was late to work and SC ▮▮▮ documented his absence as AWOL.

29.  SC ▮▮▮ stated the NERL chemists were provided with the utmost protective equipment, including laboratory coats, goggles and gloves which are required. SC ▮▮▮ stated anything above the aforementioned equipment was at the chemist's discretion. SC ▮▮▮ stated FC Fuentecilla had a severe allergic reaction to heroin and would have to wear a face mask; however, he never showed a problem with methamphetamine exhibits.

30.  SC ▮▮▮ referred to the Capillary Electrophoresis (CE) test completed on Exhibit #38. [NOTE: CE testing determined the isomer for methamphetamine and was used by prosecutors to charge a defendant with the "ICE" methamphetamine charge.] SC ▮▮▮ stated during this test on an exhibit, there was particular information the CE instrument tracked. The CE tracked the "injection date" which was the date the exhibit was entered into the CE for testing. When a chemist worked with the CE instrument, they had to set up a sequence which indicated the date of the analysis and a random generated number was given to the exhibit being tested. SC ▮▮▮ stated for Exhibit #38, the data paths indicated November 17, 2010, which remained the same, although the injection date was depicted as December 1, 2010. When SC ▮▮▮ returned to the CE instrument to review the data, all the data for that particular generated number, with the date of November 17, 2010, could no longer be recovered to include the sample injected on December 1, 2010. SC ▮▮▮ could not provide Inspectors with a reason why the data could no longer be recovered. SC ▮▮▮ stated either someone removed it from the instrument or it could just be a computer "glitch." SC ▮▮▮ stated someone could have "overwrote" the files. SC ▮▮▮ could not give an affirmative answer regarding the missing data. SC ▮▮▮ stated ▮ had not received the final reports for Exhibit #38, and before ▮ could approve the final reports, FC Fuentecilla would have to conduct the CE test. [NOTE: According to LEMS, Exhibit #38 was sealed on December 2, 2010, without having a CE test completed.] **[TAB 3]**

31.  On February 4, 2010, Inspectors interviewed SC ▮▮▮ again to clarify multiple issues with the evidence FC Fuentecilla tested and his documentation of the analysis. Since the initial interview, the NERL reviewed FC Fuentecilla's analysis of exhibits and the paperwork surrounding the processing of exhibits assigned to him.

32.  SC ▮▮▮ stated there were two systems documenting chain of custody at the NERL. The first system was LEMS and the other was a DEA-86. All evidence received in the laboratory was bar-coded in LEMS, a computer operated system, where it is assigned a unique laboratory number. SC ▮▮▮ stated all transactions concerning a piece of evidence, which included "date out to analyst" and "date from analyst" were also recorded in the system. According to SC ▮▮▮ all forensic chemists, in accordance with LOM, Chapter 73, section 7302.53 (TAB 4A), were instructed to record raw data, observations, calculations and numerous dates, to include date received and date sealed, on a DEA-86 at the time they are made. All evidence transaction dates, recorded in LEMS (TAB 4B), should be identical to the dates recorded on the

OPR Final Report
(June 2000, TBP)

**DEA SENSITIVE**
**Drug Enforcement Administration**

Page 7 of 20

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

| Office of Professional Responsibility | 1. File Number: █████████ | 2. Date: October 21, 2011 |
|---|---|---|
| **REPORT OF INVESTIGATION**<br>*(Continuation)* | 3. File Title: Ken Fuentecilla (Forensic Chemist) | |

DEA-86. SC █████ explained that on several occasions, FC Fuentecilla knowingly recorded erroneous dates on active case files. The specifics for each case are detailed below:

| Case # | Drug | Exhibit # | Evidence Out to Analyst (recorded by LEMS) | Evidence Received Date (recorded on DEA-86 by FC Fuentecilla) |
|---|---|---|---|---|
| ███████ | Meth | 1 | 2/08/2010 | 4/14/2010 |
| | Meth | 10 | 2/08/2010 | 4/15/2010 |
| | Meth | 27 | 3/25/2010 | 4/14/2010 |
| | Meth | 28 | 3/25/2010 | 4/14/2010 |
| | Meth | 29 | 3/25/2010 | 4/14/2010 |
| | Meth | 30 | 5/04/2010 | 6/28/2010 |
| | Meth | 31 | 5/04/2010 | 6/28/2010 |
| | Meth | 32 | 5/04/2010 | 6/28/2010 |
| | Meth | 38 | 11/05/2010 | 11/16/2010 |
| | Meth | 40 | 6/28/2010 | 8/25/2010 |
| | Cocaine | 12 | 9/02/2010 | 9/03/2010 |
| | Cocaine | 13 | 9/02/2010 | 9/03/2010 |
| | Cocaine | 14 | 9/02/2010 | 9/03/2010 |
| | Cocaine | 17 | 9/02/2010 | 9/03/2010 |
| | Cocaine | 18 | 9/02/2010 | 9/03/2010 |
| | Cocaine | 19 | 9/02/2010 | 9/03/2010 |
| | Cocaine | 20 | 9/02/2010 | 9/03/2010 |

33. In another instance, FC Fuentecilla falsified the date received from the vault, and the date he sealed the evidence. Under case #Case █████ Exhibit #5, FC Fuentecilla incorrectly documented dates indicated below:

| Evidence Out to Analyst (recorded by LEMS) | Evidence Received Date (recorded on DEA-86 by FC Fuentecilla) | Date Evidence Opened (recorded on DEA-86 by FC Fuentecilla) | Date Evidence Sealed (recorded on DEA-86 by FC Fuentecilla) | Date From Analyst to Vault (recorded by LEMS) |
|---|---|---|---|---|
| 6/28/2010 | 10/27/2010 | 8/24/2010 | 10/28/2010 | 10/27/2010 |

34. According to the above entry, Mr. Fuentecilla sealed the evidence on October 28, 2010, after it was returned to the vault on October 27, 2010. The entry also documented Mr. Fuentecilla opened the exhibit on August 24, 2010, but he received the exhibit on October 27, 2010. According to LEMS, the evidence was removed on June 28, 2010 and returned on October 27, 2010.

35. SC █████ stated all chemists were required to fill out Daily Laboratory Staff Time Expenditures Reports (DEA-271) each day to account for the amount of time expended on each exhibit. An audit of

OPR Final Report<br>(June 2000, TBP)

**DEA SENSITIVE**<br>**Drug Enforcement Administration**

Page 8 of 20

This report is the property of the Drug Enforcement Administration.<br>Neither it nor its contents may be disseminated outside the agency to which loaned.

| Office of Professional Responsibility | 1. **File Number:** ▮▮▮▮ | 2. **Date:** October 21, 2011 |
|---|---|---|
| **REPORT OF INVESTIGATION** *(Continuation)* | 3. **File Title:** Ken Fuentecilla (Forensic Chemist) | |

Mr. Fuentecilla's DEA-271s was conducted on December 9, 2010, concerning all the above listed cases as well as other NERL and North Central Laboratory cases. Results of the audit revealed numerous inconsistencies and the falsification of official government documents. Examples included time being charged on random days after the exhibit was sealed and reported to the supervisor, charging time to an exhibit when the evidence was not opened, and not charging time to an exhibit that had been analyzed. (TAB 4C)

36.   In several instances, FC Fuentecilla continued to charge time after the exhibit was sealed. In one instance, Mr. Fuentecilla charged time to an exhibit 31 days after it was returned to the vault (marked with * in TAB 4C). In case ▮▮▮▮ Exhibit #3, FC Fuentecilla generated analytical data after the original report was given to the supervisor (marked with ** in Attachment TAB 4C), and also failed to account for the amount of time expended on the additional tests performed on August 13, 2010. In case ▮▮▮▮ Exhibit #1, FC Fuentecilla charged 13 hours of time to the exhibit before the evidence was opened. [NOTE: FC Fuentecilla regularly accounted for time on an exhibit prior to the evidence being opened which was documented in the gray areas in TAB 4C.] There were numerous instances where no time was recorded for a completed exhibit.

37.   SC ▮▮▮▮ stated FC Fuentecilla's failure to accurately record proper dates on various forms caused unnecessary chain of custody transactions in LEMS and problems for Assistant United States Attorney's (AUSA). SC ▮▮▮▮ stated FC Fuentecilla's sloppiness was memorialized in his work product which contained missing, incomplete and/or incorrect documentation on the DEA-86, which called into question chain of custody issues that an AUSA had to explain to the court which could result in the evidence not being able to be used against a defendant.

38.   SC ▮▮▮▮ stated all FCs were provided with a Performance Work Plan (PWP) at the beginning of each rating cycle and each chemist was required to manage their assigned casework to meet a 30 day due date. The length of time a piece of evidence was in the possession of a chemist was tracked on an "Out to Chemist Report," generated by LEMS. Twenty consecutive days was the maximum amount of time a piece of evidence could be in the custody of a chemist at the NERL. [NOTE: This amount was set at the discretion of the Laboratory Director and used as an informal "checks and balance."] When 17 days of possession is reached, the "Out to Chemist Report" was provided to the SC for appropriate follow up. FC Fuentecilla routinely returned evidence to the vault at various stages of analysis to reset the amount of time the exhibit was in his possession. Once FC Fuentecilla returned a piece of evidence to the vault, he made another transaction seconds later, taking possession of the evidence again. Five chain of custody transactions on cases ▮▮▮▮ (Exhibit #10), ▮▮▮▮ (Exhibit #1), and ▮▮▮▮ (Exhibits #30, #31, and #32), and five chain of custody transactions in case # ▮▮▮▮ (Exhibits: #27, #28, #29, #38, and #39) document FC Fuentecilla's apparent attempt to hide the length he had exhibits in his custody. [NOTE: The above referenced cases were all methamphetamine exhibits.]

39.   SC ▮▮▮▮ stated case ▮▮▮▮, Exhibit #5, was initially taken out of the vault on June 28, 2010, was returned and taken back out on July 19, 2010, returned and taken back out on July 29, 2010. [NOTE: Exhibit #5 was methamphetamine and FC Fuentecilla documented opening the exhibit, but did not perform

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

| Office of Professional Responsibility | 1. **File Number:** ▮▮▮ | 2. **Date:** October 21, 2011 |
|---|---|---|
| **REPORT OF INVESTIGATION** *(Continuation)* | 3. **File Title:** Ken Fuentecilla (Forensic Chemist) | |

any tests on the drug.] The exhibit was sealed and returned to the vault on August 26, 2010. SC ▮▮▮ stated that on September 13, 2010, FC Fuentecilla analyzed the exhibit and returned it back to the vault on October 27, 2010. SC ▮▮▮ stated notification, via email was received from Laboratory Director ▮▮▮ North Central Laboratory, to SC ▮▮▮ (TAB 4D), in which Director ▮▮▮ stated FC Fuentecilla was in possession of this evidence for over 42 days. SC ▮▮▮ stated the analytical results were reported to ▮ on December 3, 2010, 36 days after all testing was completed and after a total of 103 days in FC Fuentecilla's possession. SC ▮▮▮ stated the time FC Fuentecilla took to analyze the aforementioned exhibit was completely unacceptable and displayed blatant disregard for evidence accountability.

40.   SC ▮▮▮ stated case # ▮▮▮ Exhibits #40 and #39 were submitted on the same DEA-7. [NOTE: Both Exhibits #39 and #40 were methamphetamine.] SC ▮▮▮ stated per NERL policy, FC Fuentecilla was to complete all exhibits listed on the DEA-7 and report each of them on the same day when completed. SC ▮▮▮ stated FC Fuentecilla received Exhibit #40 from the vault on June 28, 2010, returned the exhibit back to vault unanalyzed on July 19, 2010, and took it back out on the same day, July 19, 2010. SC ▮▮▮ stated FC Fuentecilla completed the analysis of Exhibit #40 and returned it back to the vault on August 25, 2010. SC ▮▮▮ stated Exhibit #39, which was submitted on the same DEA-7 as Exhibit #40, was never taken out of the vault for analysis. SC ▮▮▮ stated that on December 2, 2010, FC Fuentecilla informed SC ▮▮▮ of the status of aforementioned exhibits. SC ▮▮▮ instructed FC Fuentecilla to immediately report his completed results of Exhibit #40. SC ▮▮▮ stated that on December 6, 2010, FC Fuentecilla reported the analytical results for Exhibit #40, three months after all testing was completed. SC ▮▮▮ questioned FC Fuentecilla about the delay in reporting his results and he stated he "put it on the back burner." SC ▮▮▮ stated ▮ assigned Exhibit #39 to another chemist in ▮ group in an effort to get the needed results to the agents involved in the active investigation.

41.   SC ▮▮▮ stated case # ▮▮▮ Exhibits #2, #3, and #4, originated from a clandestine methamphetamine laboratory, which was sampled, by FC Fuentecilla in the field on June 25, 2010. SC ▮▮▮ stated all three exhibits were received in the laboratory on June 28, 2010 and FC Fuentecilla took custody of the evidence from the vault on July 2, 2010, and he returned the three exhibits on July 19, 2010. SC ▮▮▮ stated that on July 19, 2010, the evidence was taken back out again and returned on August 4, 2010. SC ▮▮▮ stated according to the generated data, all analytical tests were completed by FC Fuentecilla on July 5, 2010. SC ▮▮▮ stated upon administrative review, the exhibits were deemed incomplete and needed additional analysis prior to submitting a report to the agents in the field. SC ▮▮▮ stated SC ▮▮▮ (FC Fuentecilla's previous supervisor) instructed FC Fuentecilla regarding the additional testing requirements and requested a "quick" turnaround time. SC ▮▮▮ stated FC Fuentecilla took the evidence out of the vault for retesting on August 10, 2010, and performed his analysis on August 13, 2010, for Exhibit # 3 and August 26, 2010, for Exhibits #2 and #4. SC ▮▮▮ stated all three units were returned to the vault on August 30, 2010. SA ▮▮▮ stated the final typed report was completed and forwarded for supervisory concurrence on December 6, 2010, which was 130 days after FC Fuentecilla first removed them from the vault.

**DEA SENSITIVE**
**Drug Enforcement Administration**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

| Office of Professional Responsibility **REPORT OF INVESTIGATION** *(Continuation)* | 1. File Number: ███ | 2. Date: October 21, 2011 |
| --- | --- | --- |
| | 3. File Title: Ken Fuentecilla (Forensic Chemist) | |

42.  SC ███ stated per LOM, Chapter 73, Section 7302.41 (TAB 4E), Determination of Gross Weight stated: "If the weight differs from the submitting SA's, TFO's or DI's reported weight by more than two (2) grams or 0.2% of the gross weight, whichever is greater, or if there is no gross weight recorded either on the evidence package or DEA-7, the forensic chemist's weight must be witnessed by the supervisor or another Forensic Chemist prior to breaking the seal." SC ███ stated Exhibit #5 in case # ███, the agent recorded a gross weight of 140.42g; the weight recorded by Mr. Fuentecilla on the DEA-86 was 130.4g on August 24, 2010. SC ███ stated FC Fuentecilla violated LOM policy because failed to have a witness present prior to breaking the seal (due to the ten gram discrepancy); therefore, the integrity of the actual weight could not be determined. **[TAB 4]**

43.  On February 11, 2011, SC ███ was interviewed and stated ███ assigned Chicago Division cases to FC Fuentecilla when he (Fuentecilla) was under ███ supervision. SC ███ stated ███ assigned Chicago Division cases as "back log" cases and did not put a "turn around" time on them. SC ███ stated Chicago Division exhibits were to be worked on after assigned NERL exhibits were completed. SC ███ stated he found it "odd" that Chicago Division exhibits were out for "months."

44.  SC ███ stated that on October 25, 2010, FC Fuentecilla was provided with written instruction from him concerning case # ███, Exhibit #5. SC ███ stated the written directive stemmed from an e-mail originated from Director ███ concerning the length of time the piece of evidence was out of the vault. SC ███ written instructions for FC Fuentecilla were to "please take care of this today." SC ███ stated FC Fuentecilla completed the bulk of his analysis on October 27, 2010, two days after the provided instruction, and subsequently reported his results on December 3, 2010, 36 days after his written instruction.

45.  SC ███ stated ███ helped FC Fuentecilla become a FC at the NERL from Mr. Fuentecilla's previous position with the ███ laboratory. Upon his initial hiring, FC Fuentecilla was "great" and through the years, FC Fuentecilla's performance drastically changed. SC ███ stated in order for FC Fuentecilla to complete his assigned work, SC ███ had to "stay on top of him every moment." SC ███ stated ███ verbally counseled FC Fuentecilla regarding his work performance on exhibits. SC ███ stated on two separate occasions, Director ███ contacted him regarding exhibits which were late according to the Chicago Division LEMS and were assigned to FC Fuentecilla. SC ███ was notified via email regarding the late exhibits which were listed under case numbers ███, and ███ (TAB 5A). [NOTE: The exhibits in ███ (Exhibits #30, #31 and #32) and ███ (Exhibit #5) were methamphetamine exhibits.]

46.  SC ███ stated FC Fuentecilla became increasingly "unfocused" and was consistently late ranging from 15 minutes late to an hour and a half late. SC ███ began documenting his tardiness and SC ███ placed FC Fuentecilla on leave restriction. SC ███ wrote two memorandums (TAB 5B) titled "Leave Restriction Notification – Requirement for Future Use of Annual and Sick Leave," for April 2010, and June 2010.

This report is the property of the Drug Enforcement Administration. Neither it nor its contents may be disseminated outside the agency to which loaned.

| Office of Professional Responsibility **REPORT OF INVESTIGATION** *(Continuation)* | 1. File Number: ███████ | 2. Date: October 21, 2011 |
|---|---|---|
| | 3. File Title: Ken Fuentecilla (Forensic Chemist) | |

47.  SC ███████ stated ███ wrote a memorandum dated August 12, 2009, (TAB 5C) titled, "Letter of Caution Issue (sic) to Forensic Chemist Ken Fuentecilla Regarding a Security Violation and Violation of Established Policy." SC ███████ stated FC Fuentecilla emailed a link to the LOM to an outside agency, which was a security violation, and violated the Laboratory System Order LS-08-002, Disclosure Policy (TAB 5D). **[TAB 5]**

48.  On March 24, 2011, FC Fuentecilla was interviewed regarding his written documentation on his FC Worksheets (DEA-86) and policy violations regarding the LOM. FC Fuentecilla acknowledged he knew where to find the LOM and how to access it through the STAR drive. FC Fuentecilla acknowledged he was required to know the LOM to perform his duties.

49.  FC Fuentecilla explained when a new exhibit was assigned to a FC to analyze, a supervisor provided them with a DEA-7, which showed when an exhibit first came into the laboratory and was completed by a SA. FC Fuentecilla stated a FC had 30 days to complete the analysis. FC Fuentecilla stated he would then go to the evidence vault where the ET scanned the evidence out to him. FC Fuentecilla stated an ET documented the transaction via LEMS or through the STRIDE system which tracked what came in and out of the vault. FC Fuentecilla stated the ET first scanned the exhibit, inputted the ET's code and documented the chemist's name. FC Fuentecilla stated when the piece of evidence was scanned, the ET then requested FC Fuentecilla to enter his password. FC Fuentecilla stated he took the exhibits to his bench and began analysis.

50.  FC Fuentecilla stated a FC could hold an exhibit as long as it was in a lock box. FC Fuentecilla stated he sometimes took out four or five exhibits at one time and kept them in his lock box and worked on them when time permitted. FC Fuentecilla stated analysis time frames depended on what came in and what needed to be done that day. FC Fuentecilla stated a small piece of evidence could take a half of a day or a day, and a bulk exhibit could take longer. FC Fuentecilla stated the number of exhibits he kept in his possession depended upon what pieces of evidence came into the vault.

51.  FC Fuentecilla stated the 30 day time frame was a goal and only used for "evaluation purposes." FC Fuentecilla stated SC ███████ permitted him to "re-set" the LEMS database by returning an exhibit to the vault, which "re-sets" the clock and then having the ET scan the exhibit out again on the same day. FC Fuentecilla stated when GS ███████ received notification of exhibits that were out of the vault for 20 days, ███ approached FC Fuentecilla and told him to either complete the analysis or "re-set" the clock in the vault. [NOTE: ██████████████████████ ]
████████████████████

52.  FC Fuentecilla was shown a LEMS printout pertaining to multiple exhibits he had in his possession for an extended period of time (TAB 6A). FC Fuentecilla stated the LEMS report was like a transaction report for multiple pieces of exhibits. FC Fuentecilla stated "CFUEN" identified him and the "E" referred to the ET who assisted him obtaining the exhibits. [NOTE: TAB 6A was utilized during the interview to show FC Fuentecilla's inconsistent dates which he documented on his DEA-86.]

**DEA SENSITIVE**
**Drug Enforcement Administration**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

| Office of Professional Responsibility | 1. File Number: ▮▮▮▮▮ | 2. Date: October 21, 2011 |
|---|---|---|
| **REPORT OF INVESTIGATION**<br>*(Continuation)* | 3. File Title: Ken Fuentecilla (Forensic Chemist) | |

53.  FC Fuentecilla explained a DEA-86 was where the analysis was documented "like weights and when we opened it and closed it." FC Fuentecilla stated a DEA-86 documented how "we" handled the evidence. FC Fuentecilla stated he only completed a DEA-86 after the analysis was completed. FC Fuentecilla stated when he received the evidence from the vault he would write the date on the back of the DEA-7 to remind him what date he first took it from the vault. FC Fuentecilla stated he never completed the DEA-86 prior to his analytical analysis because he stated it would be "writing analysis before it was analyzed."
FC Fuentecilla stated a FC took everything out of the bag and retrieved a net weight of the powder alone and then the powder was placed into a composite bag. FC Fuentecilla stated once he retrieved the weights, he could then start the analysis.

54.  FC Fuentecilla was shown his DEA-86 regarding case number ▮▮▮▮▮ Exhibit #1, (TAB 6B) and confirmed it was his report and signature. FC Fuentecilla stated Exhibit #1 was a methamphetamine exhibit and wrote on his DEA-86 he first came in contact with Exhibit #1 on April 14, 2010. [NOTE: According to the LEMS printout, the date FC Fuentecilla first came into contact with Exhibit #1 was on February 8, 2010.] FC Fuentecilla stated this was during a time when he was unable to "get to the exhibit" and said, "like I said earlier, go and re-set the clock." FC Fuentecilla stated he used April 14, 2010, on his DEA-86 because he did not realize he had it in his possession prior to the second time he took it out. [NOTE: According to the LEMS report he returned Exhibit #1 to the vault and checked it out on the same day.]  FC Fuentecilla stated if he testified regarding his initial contact with Exhibit #1, according to his DEA-86, his testimony would be incorrect.

55.  FC Fuentecilla was shown his DEA-86 regarding case number ▮▮▮▮▮ Exhibit #10 (TAB 6C) and confirmed it was his report and signature. FC Fuentecilla stated Exhibit #10 was methamphetamine and first came in contact with the exhibit on April 15, 2010. [NOTE: According to the LEMS printout, FC Fuentecilla received the exhibit on February 8, 2010.] FC Fuentecilla stated, "again, before I was able to work on it, he took it back to the vault and took it back out on April 15, 2010." FC Fuentecilla stated "just like the last one," he may have taken too many exhibits out and could not get to the analysis of the exhibit. [NOTE: Inspectors advised FC Fuentecilla when he "re-set" the clock on Exhibit #10, he was able to complete the analysis on April 16, 2010. FC Fuentecilla stated a quick turnaround time would depend on the instruments and if other exhibits took precedence; however, he could get an exhibit done in a day or half a day.] FC Fuentecilla stated there were times when he took out too many exhibits and would know he had some exhibits in his lock box. FC Fuentecilla stated he "feels" the date was correct because it was the day he began working on the exhibit which contradicted the LOM policy. FC Fuentecilla stated he would document the date he received it from the vault when he was ready to analyze the exhibit. [NOTE: A review of his analysis of exhibits from February 3, 2009 through December 2010, indicated FC Fuentecilla incorrectly wrote the date received out of the vault on 125 exhibits out of the 462 he analyzed.] FC Fuentecilla stated he was always allowed by GS ▮▮▮▮▮ to "re-set" the clock for an exhibit (TAB 6C).

56.  FC Fuentecilla was shown his DEA-86 regarding case number ▮▮▮▮▮ Exhibit #27 (TAB 6D), Exhibit #28 (TAB 6E), Exhibit #29 (TAB 6F),  and confirmed they were his reports and signature. FC Fuentecilla stated all three Exhibits were methamphetamine and according to his DEA-86s, first came into contact with the Exhibits on April 14, 2010. [NOTE: According to the LEMS printout, FC Fuentecilla

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

| Office of Professional Responsibility | **1. File Number:** ▮▮▮▮▮▮ | **2. Date:** October 21, 2011 |
| **REPORT OF INVESTIGATION**<br>*(Continuation)* | **3. File Title:** Ken Fuentecilla (Forensic Chemist) | |

received Exhibits #27, #28, and #29 on March 25, 2010.] FC Fuentecilla stated it was the same situation that he could not work on the exhibits. FC Fuentecilla stated he believed his DEA-86 was correct except for the date he first came into contact with the exhibit. FC Fuentecilla stated he thought these were, "a bunch of exhibits he took out at the same time and returned them at the same time." FC Fuentecilla was asked if he batched the aforementioned methamphetamine exhibits and he said, "he assumed so because I would have to do all the analysis at the same time."

57.   FC Fuentecilla was shown his DEA-86 regarding case number ▮▮▮▮▮ Exhibit #30 (TAB 6G), Exhibit #31 (TAB 6H), Exhibit #32 (TAB 6I), and confirmed they were his reports and signature. FC Fuentecilla stated all three Exhibits were methamphetamine and according to his DEA-86s, first came into contact with the Exhibits on June 28, 2010. [NOTE: According to the LEMS printout, FC Fuentecilla received Exhibits #30, #31, and #32 on May 4, 2010.] FC Fuentecilla stated he kept Exhibit #30 opened in his "lock box" for eight days and stated it was not sealed. FC Fuentecilla stated there was nothing wrong with having an open exhibit in a "lock box." FC Fuentecilla stated it was the same situation where he took out many exhibits and returned them at the same time. FC Fuentecilla stated he was unsure if a 30 day turnaround time was policy or if it is just utilized for evaluation purposes.

58.   FC Fuentecilla was shown his DEA-86 regarding case number ▮▮▮▮▮ Exhibit #38 (TAB 6J), and confirmed it was his report and signature. FC Fuentecilla stated Exhibit #38 was methamphetamine and according to his DEA-86, first came into contact with Exhibit #38 on November 16, 2010. According to the LEMS printout, FC Fuentecilla received the exhibit on November 5, 2010. [NOTE: FC Fuentecilla stated Exhibit #38 was the exhibit he was exposed to prior to his random drug test where he tested positive for methamphetamine.]

59.   FC Fuentecilla was shown his DEA-86 regarding case number ▮▮▮▮▮ Exhibit #40 (TAB 6K), and confirmed it was his report and signature. FC Fuentecilla stated Exhibit #40 was methamphetamine and according to his DEA-86, first came into contact with Exhibit #40 on August 25, 2010. According to the LEMS printout, FC Fuentecilla received the exhibit on June 28, 2010. FC Fuentecilla stated he wrote the date he received it from the vault the most recent time.

60.   FC Fuentecilla was shown his DEA-86 regarding case number ▮▮▮▮▮ Exhibit #12 (TAB 6L), Exhibit #13 (TAB 6M), Exhibit #14 (TAB 6N), Exhibit #17 (TAB 6O), Exhibit #18 (TAB 6P), and confirmed they were his reports and signature. FC Fuentecilla stated all five Exhibits were cocaine and according to his DEA-86s, first came into contact with the Exhibits on September 3, 2010. [NOTE: According to the LEMS printout, FC Fuentecilla received Exhibits #12, #13, #14, #17 and #18 on September 2, 2010.] FC Fuentecilla stated he was able to complete the analysis of Exhibits #12, #13, and #14 on September 9, 2010. According to FC Fuentecilla's DEA-86, he opened Exhibit #17 and #18 on September 8, 2010, and sealed the exhibits on September 9, 2010. FC Fuentecilla stated he probably batched the aforementioned exhibits together and just put the wrong date. FC Fuentecilla stated a methamphetamine test had two or three more tests to complete than a cocaine exhibit. FC Fuentecilla stated he did not write the wrong dates intentionally. FC Fuentecilla admitted he incorrectly documented the dates on both cocaine and methamphetamine exhibits. [NOTE: FC Fuentecilla could not provide a reason why he retained the

This report is the property of the Drug Enforcement Administration.<br>Neither it nor its contents may be disseminated outside the agency to which loaned.

| Office of Professional Responsibility | 1. File Number: | 2. Date: October 21, 2011 |
|---|---|---|
| **REPORT OF INVESTIGATION**<br>*(Continuation)* | 3. File Title: Ken Fuentecilla (Forensic Chemist) | |

methamphetamine exhibits for an extended period of time and was able to complete all the cocaine exhibit analysis in a reasonable amount of time.] FC Fuentecilla stated he also blamed it on the fact he was not notified of the "days out of vault" for the Chicago exhibits. FC Fuentecilla stated it was all based upon his workload during the retention of the methamphetamine exhibits that precluded him from working on them.

61.   FC Fuentecilla was shown his DEA-86 regarding case number             Exhibit #19 (TAB 6Q), and confirmed it was his report and signature. FC Fuentecilla stated Exhibit #19 was boric acid and caffeine, and according to his DEA-86, first came into contact with Exhibit #19 on September 3, 2010. [NOTE: According to the LEMS printout, FC Fuentecilla received the exhibit on September 2, 2010.]

62.   FC Fuentecilla was presented LOM policy 7302.53, Forensic Chemist Worksheet, DEA-86, and Continuation Worksheet, DEA-86a (TAB 6R). [NOTE: LOM 7302.53 stated in part, "All observations, data and calculations must be recorded at the time they are made and must be identifiable to the specific task; the date the forensic chemist receives the evidence for analysis."] FC Fuentecilla was asked if he admitted to violating the LOM policy and stated "Technically those are the dates I put on." FC Fuentecilla admitted as an FC he did not record the initial date he received an exhibit on his DEA-86; however, he contended he did put the date he started working on the exhibit. FC Fuentecilla was presented with a copy of the LOM policy 7302.53 and his DEA-86s he prepared in the performance of his duties. FC Fuentecilla stated he did not realize the policy meant "initial" receipt of an exhibit. FC Fuentecilla stated he did not think he was violating policy by not writing the initial date he received an exhibit from the vault. FC Fuentecilla stated he "realized it now," the date should read when he initially received the exhibit required by LOM 7302.53. [NOTE: FC Fuentecilla reviewed and authenticated DEA-86s he authored, and prepared regarding TABs 6A through R.]

63.   FC Fuentecilla was presented LOM 7005.31, Disclosure of Forensic Analysis Worksheets (TAB 6S). [NOTE: LOM 6621 B stated in part, "Forensic chemists, fingerprint specialists, and computer forensic examiners may provide copies of the front and back of their worksheet, when requested under Federal Rule of Criminal Procedure 16, or equivalent State Rule, and when authorized by the prosecuting attorney; copies of the worksheets (DEA-86) will be provided to the prosecutor only; copies of the worksheets will not be given directly to a defense attorney by laboratory personnel.] FC Fuentecilla reviewed and authenticated LOM 7005.31 (TAB 6S). FC Fuentecilla stated "how am I supposed to realize this is wrong when my supervisor told me to re-set it." Inspectors informed him the prior discussion was regarding the dates he wrote on his DEA-86 and not "re-setting" the clock.

64.   FC Fuentecilla was shown his DEA-86 regarding case number             , Exhibit #5 (TAB 6T), and confirmed it was his report and signature. FC Fuentecilla stated Exhibit #5 was methamphetamine and documented October 27, 2010 as the date he received it. FC Fuentecilla stated according to his DEA-86, he opened Exhibit #5 on May or August 24, 2010. [NOTE: FC Fuentecilla's writing was illegible and the month was either May or August.] According to his LEMS report (TAB 6U), FC Fuentecilla stated he received Exhibit #5 on June 28, 2010. FC Fuentecilla was asked what date he returned Exhibit #5 to the vault (per LEMS), and he stated October 27, 2010. According to FC Fuentecilla's DEA-86, he sealed Exhibit #5 on October 28, 2010, which contradicted his documented date he returned the exhibit of

OPR Final Report<br>(June 2000, TBP)

**DEA SENSITIVE**<br>**Drug Enforcement Administration**

Page 15 of 20

This report is the property of the Drug Enforcement Administration.<br>Neither it nor its contents may be disseminated outside the agency to which loaned.

| Office of Professional Responsibility | 1. File Number: ▮▮▮▮▮▮ | 2. Date: October 21, 2011 |
|---|---|---|
| **REPORT OF INVESTIGATION**<br>*(Continuation)* | 3. File Title: Ken Fuentecilla (Forensic Chemist) | |

October 27, 2010. FC Fuentecilla stated he disagreed with the date Inspectors identified as October 28, 2010, and said it was October 27, 2010. FC Fuentecilla stated it was an "over write" and it could be a "25" and not a "28." [NOTE: FC Fuentecilla's supervisor had to review the DEA-86 with FC Fuentecilla and corrected his original DEA-86. The corrected DEA-86 was located in TAB 6U and the exhibit had to be re-analyzed.] FC Fuentecilla admitted he had Exhibit #5 in his possession for approximately three months and stated he had other exhibits to complete which took priority. [NOTE: During FC Fuentecilla's first OPR interview he stated that Exhibit #5 was one of the possible exhibits he was exposed to which may have caused his positive test to methamphetamine. FC Fuentecilla did not have exposure to Exhibit #5 for 20 days prior to his drug test.]

65.    FC Fuentecilla was shown a Report of Drug Property Collected, Purchased, or Seized (DEA-7) completed by Task Force Officer (TFO)▮▮▮▮▮▮ (TAB 6V). FC Fuentecilla was asked what was the gross weight submitted and he stated "140.42 grams." FC Fuentecilla stated according to his DEA-86 (TAB 6T), Exhibit #5 weighed 130.4 grams, approximately a ten gram discrepancy. FC Fuentecilla stated if the difference was greater than two percent or two grams of the gross submitted weight, a FC was required to have someone witness the actual weight. FC Fuentecilla stated his DEA-86 was not witnessed. FC Fuentecilla stated sometimes a supervisor identified the discrepancy after the analysis and "would just initial it without witnessing the weight." FC Fuentecilla stated there were times when a FC weighed the exhibit without getting a witness. FC Fuentecilla stated it could have been the scale, something could have been on it, or up against the wall. [NOTE: OPR contacted DEA Minneapolis Group Supervisor ▮▮▮▮▮▮ who advised the Mettler scale utilized for the submitted gross weight by TFO ▮▮▮▮ was calibrated on April 6, 2010, which was a month prior to TFO ▮▮▮ s submission of Exhibit #5. In addition, the scales utilized by the NERL are calibrated once a month and professionally calibrated once a year.]

66.    FC Fuentecilla was presented LOM 7302.4, Opening and Resealing/Determination of gross weight (TAB 6W). [NOTE: LOM 7302.4 stated in part, "Weigh the properly sealed envelope or package to determine the gross weight; if the weight differs from the submitting SA's, TFO's or DI's reported weight by more than two (2) grams of 0.2% of the gross weight, whichever is greater, or if there is no gross weight recorded either on the evidence package of DEA-7, the forensic chemist's weight must be witnessed by the supervisor or another forensic chemist prior to breaking the seal; this applies to all evidence submissions; a notation should be made on the back of the DEA-86, and appropriate follow up action must be taken which may include referral to OPR.] FC Fuentecilla admitted that as an FC there were times when he failed to get the gross weight witnessed when he realized there was a discrepancy with the paperwork. FC Fuentecilla stated he just weighed the exhibit and continued with the analysis without checking the DEA-7. FC Fuentecilla stated if he noticed the discrepancy at the time, he would have gotten a witness. [NOTE: FC Fuentecilla reviewed and authenticated LOM 7302.4.] FC Fuentecilla was presented with a copy of the DEA-86 (TAB 6U) and TFO ▮▮▮ s DEA-7 (TAB 6V) and stated he did not notice the weight discrepancy on Exhibit #5; however, FC Fuentecilla stated his error did not mean the methamphetamine was missing. FC Fuentecilla stated he understood there was a ten gram discrepancy and disagreed ten grams was "missing."

This report is the property of the Drug Enforcement Administration.<br>Neither it nor its contents may be disseminated outside the agency to which loaned.

| Office of Professional Responsibility **REPORT OF INVESTIGATION** *(Continuation)* | 1. File Number: ██████ | 2. Date: October 21, 2011 |
|---|---|---|
| | 3. File Title: Ken Fuentecilla (Forensic Chemist) | |

67. FC Fuentecilla was shown an email entitled: "Evidence out for more than 30 days, Director ███ to GS ██████ on October 25, 2010," regarding ██████ Exhibit #5, which was out of the vault for 42 days (TAB 6X). On the same date, GS ██████ forwarded FC Fuentecilla the email. FC Fuentecilla stated there were times he submitted an exhibit back to the vault, without re-setting the clock, and retrieved it when he was ready for it. FC Fuentecilla stated he thought his GS meant for him just to re-set the clock and not to complete the analysis. FC Fuentecilla stated "this doesn't happen often but this could have been the time when I was in the middle of a move from Group One to Three." FC Fuentecilla stated he realized he did not have the exhibit finished and forgot about the report because of the move. FC Fuentecilla admitted he did not follow policy regarding this exhibit and stated "yes" when asked if he made significant errors on this report.

68. FC Fuentecilla was presented LOM policy 7303.4 Storage of In-Process Evidence (TAB 6Y). [NOTE: LOM 7303.4 stated in part, "Evidence may not be in the possession of the analyst for more than 30 days."] FC Fuentecilla stated the 30 day time frame was primarily used for evaluation purposes. FC Fuentecilla stated he did not know the policy pertained to the Chicago exhibits. [NOTE: FC Fuentecilla reviewed and authenticated LOM policy 7303.4.]

69. FC Fuentecilla was shown an email from Director ███ to GS ██████ entitled; "Out for more than 30 days," dated June 23, 2010, (TAB 6Z). FC Fuentecilla read the e-mail which stated under case number ██████ Exhibits #30, #31 and #32 were out of the vault for 36 days. FC Fuentecilla stated he must have been "doing other things," other than those exhibits. FC Fuentecilla stated GS ██████ "had approached him about a lot of exhibits to get re-set." FC Fuentecilla stated GS ██████ would tell all his chemists to re-set the clock. FC Fuentecilla stated "we" were told the Chicago exhibits did not have a deadline. FC Fuentecilla stated when they were assigned exhibits the chemists were told to "work them in," when they had time.

70. FC Fuentecilla was presented LOM policy, 7001.25, Responsibility of Forensic Chemists (TAB 6AA). [NOTE: LOM policy 7001.25 stated in part, "Forensic chemists, fingerprint specialists, and computer forensic examiners, other than trainees, must develop a working knowledge of all DEA manuals and of the laws and regulations administered by DEA."] FC Fuentecilla stated he understood the policy and stated "the chain of custody issues could make or break a case," regarding SAs documentation of custody for any seized items. FC Fuentecilla admitted he needed to pay more attention to dates, weights and "re-setting" the clock. FC Fuentecilla stated he did not realize "re-setting" the clock was only common in SC ██████ s group. FC Fuentecilla stated when he was transferred to SC ██████ s group he approached her about "re-setting" the clock and she stated they did not "re-set" the clock in her group.

71. FC Fuentecilla was presented DEA Agents Manual Chapter 6662.22, Special Agent (SA), Task Force Officer (TFO), Diversion Investigator (DI) Responsibilities (TAB 6BB). [NOTE: Agents Manual 6662.22 stated in part, "The duties and responsibilities of seizing SAs/TFOs and DIs include but are not limited to; properly collecting, packaging, and labeling all drug evidence taken into DEA custody; accurately reporting the acquisition, transfer, or disposal of drug evidence; ensuring that mandated reports are submitted in a timely manner, reports pertaining to the seizure of drug evidence will be completed within five working days

OPR Final Report
(June 2000, TBP)

**DEA SENSITIVE**
**Drug Enforcement Administration**

Page 17 of 20

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

| Office of Professional Responsibility | 1. File Number: ▮▮▮▮▮ | 2. Date: October 21, 2011 |
|---|---|---|
| **REPORT OF INVESTIGATION**<br>*(Continuation)* | 3. File Title: Ken Fuentecilla (Forensic Chemist) | |

of the seizure; SAs/TFOs/DIs will adhere to policy and procedures contained within this section when seizing any drug evidence in order to avoid discrepancies or accusations of theft or misappropriation, all due care will be exercised to create an unimpeachable record for the chain of custody and processing of any drug evidence.] FC Fuentecilla admitted he reported inaccurate data, but did not realize he was doing it wrong. FC Fuentecilla stated "my record keeping was all screwed up."

72. FC Fuentecilla was shown a LEMS printout, DEA-86, Laboratory report, and analytical testing for ▮▮▮▮▮▮, Exhibit #3 (TAB 6CC). FC Fuentecilla stated he retrieved Exhibit #3 from the vault on "December 11, 2009," and according to his DEA-86, first came in contact with Exhibit #3, on December 9, 2009. FC Fuentecilla was asked how he could have begun analysis on Exhibit # 3 on December 9, 2009, when he only received the exhibit on December 11, 2009. FC Fuentecilla stated "I must have mis-wrote (sic) the date again." FC Fuentecilla's attention was directed to his DEA-86 where it indicated he opened Exhibit #3 on December 9, 2009, and stated he wrote down when he received it and opened it on the same date. FC Fuentecilla stated his dates were wrong regarding Exhibit #3, and said it was "suppose to be the 11th and not the 9th." FC Fuentecilla stated per his data, the analysis occurred on December 11, 2009.

73. FC Fuentecilla was shown a LEMS printout, DEA-86, laboratory report, and analytical testing for ▮▮▮▮▮▮, Exhibit #4 (TAB 6DD). FC Fuentecilla stated he received Exhibit #4 from the vault on December 4, 2009. FC Fuentecilla was provided a copy of his DEA-86 for Exhibit #4. FC Fuentecilla was asked when did he receive Exhibit #4, according to his DEA-86, and he stated, "November 30, 2009." FC Fuentecilla was asked what date did he open Exhibit #4, per his DEA-86, and he stated, "December 3, 2009." FC Fuentecilla was asked how he could have received and opened the exhibit prior to receiving the exhibit from the vault and he stated, "This is a result of writing up my lab reports a few days after the analysis." FC Fuentecilla stated, "I'm guessing I had a lot of reports to do at the time," and wrote the wrong dates.

74. FC Fuentecilla was shown a LEMS printout, DEA-86, laboratory report, and analytical testing for ▮▮▮▮▮▮ Exhibit #42 (TAB 6EE). FC Fuentecilla was asked what date he received Exhibit #42 from the vault and he stated, "September 17, 2010." FC Fuentecilla was provided a copy of his DEA-86 for Exhibit #42. FC Fuentecilla was asked when did he receive Exhibit #42, according to his DEA-86, and he stated, "September 16, 2010," and then said "Yeah, but the rest of my data says the 17th." FC Fuentecilla stated he must have batched this with other exhibits he had taken out at the time. FC Fuentecilla was asked when he opened Exhibit #42 and he said "the 16th," and he said, "actually wrote the 16th and crossed it out." FC Fuentecilla stated he could tell he wrote the analysis report on one date with a different pen when he initially started the analysis. FC Fuentecilla stated he did not want to give wrong information to the agents, who submitted the report, and stated the rest of the DEA-86 was completed accurately.

75. FC Fuentecilla denied he was ever prescribed amphetamine prescriptions by a doctor. FC Fuentecilla was asked if he worked on any amphetamine exhibits within the past year and he stated "no, not that I know of." [NOTE: Per NERL records there were only two amphetamine exhibits during 2010 and FC Fuentecilla was not assigned those exhibits (TAB 6FF).] FC Fuentecilla stated the breakdown of methamphetamine in the body becomes amphetamine.

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

| Office of Professional Responsibility | 1. File Number: ███████ | 2. Date: October 21, 2011 |
|---|---|---|
| **REPORT OF INVESTIGATION** *(Continuation)* | 3. File Title: Ken Fuentecilla (Forensic Chemist) | |

76. FC Fuentecilla was shown his DEA-86 and analytical testing, regarding case number ███████ Exhibit #38 (TAB 6GG). During FC Fuentecilla's first interview with Inspectors he stated Exhibit #38 was a possible methamphetamine exhibit he may have been exposed to prior to his random drug test on November 16, 2010. FC Fuentecilla stated he wrote on his DEA-86 he opened Exhibit #38 on November 16, 2010. FC Fuentecilla was asked why he opened Exhibit #38 on November 16, 2010, and did not conduct analysis until December 1, 2010, and he stated "just like the other ones, I put it to the side and worked on other stuff." FC Fuentecilla stated he arrived to work at 8 a.m. and was notified via email (TAB 6HH) regarding the drug test. FC Fuentecilla stated the email should be able to be located on his Firebird account. [NOTE: Inspectors were unable to obtain any emails from FC Fuentecilla's account on November 16, 2010. Inspectors were able to retrieve all other emails for FC Fuentecilla for the past year.] FC Fuentecilla stated he did not remember deleting emails on November 16, 2010.

77. FC Fuentecilla was scheduled to submit a urine sample at 10 a.m., on November 16, 2010, and stated he opened Exhibit #38 prior to his urine test. FC Fuentecilla stated "I am not saying that this (referring to Exhibit #38) is what caused the positive test." FC Fuentecilla stated "my only explanation was that these were the only exhibits I was working on (referring to Exhibit #38 and ███████, Exhibit #5)." FC Fuentecilla stated the only reason he could have tested positive was because he was exposed to methamphetamine exhibits and said, "I know that was impossible (regarding Exhibit #38) and I can't explain it to you how it happened." FC Fuentecilla stated he agreed to only having Exhibit #38 (methamphetamine) in his possession during the time of the positive drug test for methamphetamine.

78. FC Fuentecilla was advised that during his initial interview with OPR he stated he breathed in solvent on November 16, 2010, from Exhibit #38. FC Fuentecilla stated he agreed that solvent was not methamphetamine; however, he remembered Exhibit #38 being wet because he had to scrape "it" off a towel and was in crystal form.

79. FC Fuentecilla stated the dates which were reviewed during the interview, on his DEA-86s, were inaccurate. FC Fuentecilla stated "it (the dates) coincide with the date I took it out; I see what you are getting at about the inaccuracies of the dates." [NOTE: According to LEMS, FC Fuentecilla received Exhibit #38 from the vault on November 5, 2010, and did not open the exhibit until November 16, 2010.] FC Fuentecilla was advised he would had to have been exposed within a two hour timeframe, if he adhered to his earlier statements of opening #38 on November 16, 2010, and he stated "that is why I can't even explain to why, other than that exhibit." FC Fuentecilla stated he did not use methamphetamine or was associated with anyone who used methamphetamine. FC Fuentecilla was asked if he wrote "November 16, 2010," on his DEA-86 to cover for his usage of methamphetamine and replied "No."

80. FC Fuentecilla was shown his signed Standards of Conduct form and Guiding Principles of Professional Responsibility form (TAB 6II), and stated he understood the forms he signed and dated. FC Fuentecilla stated, "anyone in the lab could be questioned about re-setting the clock." **[TAB 6]**

81. On June 2, 2011, OPR contacted Security Specialist ███████ New York Division, and requested a copy of FC Fuentecilla's badge history report (TAB 7A) which documented where

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

| Office of Professional Responsibility | 1. File Number: ▮▮▮▮▮ | 2. Date: October 21, 2011 |
|---|---|---|
| **REPORT OF INVESTIGATION** *(Continuation)* | 3. File Title: Ken Fuentecilla (Forensic Chemist) | |

FC Fuentecilla utilized his building access identification card. The report indicated FC Fuentecilla obtained his lock box from the in-process vault on November 16, 2010, at 10:28 a.m. which contained ▮▮▮▮▮ Exhibit #38 (methamphetamine). Per the LOM manual, Section 7303.4, Storage of In-process evidence, stated in part, "evidence in the process of being analyzed must be stored in the FC's security box and the security box must be stored in the In-Process Evidence Vault for all overnight storage." According to Pembrooke Occupational Health Medical Review Officer (MRO) report (TAB 7B) Quest Diagnostics documented the "date collected," as November 16, 2010 at 10:36 a.m. [NOTE: Through FC Fuentecilla's statements and LEMS database, Exhibit #38 was the only methamphetamine exhibit FC Fuentecilla had in his possession during his positive drug test for methamphetamine on November 16, 2010.]

82. FC Fuentecilla stated he opened and was exposed to Exhibit #38 prior to his drug test on November 16, 2010. According to his access into the In-process vault, and the time the sample was collected, there was an eight minute window where he could have been exposed to methamphetamine on that date. [NOTE: FC Fuentecilla's Forensic Chemist Worksheet (DEA-86) documented that he opened exhibit #38 on November 16, 2010, and according to LEMS had it in his possession since November 5, 2010. **[TAB 7]**

83. On June 3, 2011, DEA Headquarters Drug and Chemical Evaluation Section Chief Chemist ▮▮▮▮▮ Ph.D, Office of Diversion Control, was contacted regarding the "window of detection," for the intake of methamphetamine into the body and how fast it could be absorbed into the urine to produce a positive methamphetamine result. Two separate studies (TAB 8A) were referenced in explaining how fast methamphetamine could travel through a human body and produce a positive methamphetamine test. According to Huestis and Cone (2007) a study was conducted were five drug-free subjects were orally provided methamphetamine in 10 milligram and 20 milligram dosages/daily. Methamphetamine was first detected on day one (positive result) at mean times of 5.5 and 4.3 hours as per the current Department Health and Human Services (DHHS) administration confirmation cutoff concentration. [NOTE: Referenced Huestis MA ad Cone EJ (2007), Methamphetamine disposition in oral fluid, plasma, and urine, Ann New York Academy of Science; 1098: 14-121.] The second study was Olyer and colleagues (2002) which investigated the detection of limits of methamphetamine in eight volunteers in a controlled oral administration to characterize the urinary excretion of methamphetamine and its active metabolites in relation to workplace drug testing. Methamphetamine was orally administered at an initial dosage of 10 milligrams. Methamphetamine and amphetamine were initially detected over a period of 4.2 to 19.6 hours (mean of 12.4 hours) post drug administration, across all participants. [NOTE: Referenced Olyer JM, Cone EJ, Joseph RE, Moolchan ET and Huestis MA (2002), Duration of detectable Methamphetamine and Amphetamine Excretion in Urine after Controlled Oral Administration of Methamphetamine to Humans, Clinical Chemistry, 48(190): 1703-1714.] **[TAB 8]**

84. All investigation in this matter has been completed and is subject to further instructions by the Deputy Chief Inspector, OPR.

**DEA SENSITIVE**
**Drug Enforcement Administration**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

██████████████████

# Ken Fuentecilla
# Forensic Chemist

# TABLE OF CONTENTS

**TAB**             **DESCRIPTION**

1.                  Memorandum dated December 1, 2010, from Health Services Unit
                    Chief ██████████, Human Services, to Deputy Assistant
                    Administrator ██████████ Forensic Science, entitled: "Report
                    of Positive Drug Test," with 13 pages attached.

2.                  OPR-6 dated December 2, 2010, by Inspector ██████████
                    entitled: "Interview and Sworn Statement of Ken Fuentecilla on
                    December 2, 2010," with 215 pages attached.

     2A             Electronic mail (email) dated December 1, 2010, by ██████████
                    ██████, Pembrooke Occupational Health Customized Screening
                    Solutions regarding FC Fuentecilla's Positive Drug Test.

     2B             Forensic Chemist Worksheet (DEA-86), dated November 16,
                    2010, authenticated by FC Fuentecilla on December 2, 2010.

     2C             Miscellaneous paperwork retrieved from FC Fuentecilla's desk on
                    December 2, 2010.

3.                  OPR-6 dated February 3, 2011, by Inspector ██████████
                    entitled: "Interview and Sworn Statement of Group Supervisor
                    ██████████ on December 2, 2010," with 82 pages attached.

     3A             Laboratory Evidence Management Systems (LEMS) Daily
                    Evidence Transactions Report dated February 4, 2011.

     3B             Laboratory Operations Manual, Chapter 7303.4, "Storage of In-
                    process Evidence."

     3C             Forensic Chemist Worksheet, dated November 16, 2010,
                    authenticated by FC Fuentecilla on December 2, 2010.

3D Laboratory Operations Manual, Chapter 7302.53, "Forensic Chemist Worksheet, DEA-86, and Continuation Worksheet, DEA-86a."

3E Laboratory Operations Manual, Chapter 7302.41, "Determination of Gross Weight."

3F DEA Memorandum dated November 16, 2010, by Supervisory Chemist (SC) ███████, entitled: "Tardiness Issues."

4. OPR-6 dated February 24, 2011, by Inspector ███████, entitled: "Information received from SC ███████ on February 4, 2011," with 18 pages attached.

4A Laboratory Operations Manual, Chapter 7302.53, "Forensic Chemist Worksheet, DEA-86, and Continuation Worksheet, DEA-86a."

4B Laboratory Evidence Management Systems Daily Evidence Transaction Report dated February 4, 2011.

4C Drug Evidence Worksheet completed by SC ███████ regarding FC Fuentecilla's drug exhibits and LEMS comparisons.

4D Email dated June 23, 2010, from ███████, North Central Laboratory Director, to SC ███████, entitled: "Out for more than 30 days."

4E Laboratory Operations Manual, Chapter 7302.41, "Determination of Gross Weight."

5. OPR-6 dated February 14, 2011, by Inspector ███████ entitled: "Telephonic Interview with SC ███████ on February 11, 2011," with 14 pages attached.

5A Email dated June 23, 2010, from ███████ North Central Laboratory Director, to SC ███████, entitled: "Out for more than 30 days."

5B DEA Memorandum dated June 3, 2010, from SC ███████ to FC Fuentecilla, entitled: "Leave Restriction Notification, Requirements for Future Use of Annual and Sick Leave."

5C DEA Memorandum dated August 12, 2009, from SC ███████ to FC Fuentecilla, entitled: "Letter of Caution Issue to Forensic

|  | | Chemist Ken Fuentecilla Regarding a Security Violation and Violation of Established Policy." |
|---|---|---|
| | 5D | DEA Laboratory System Order dated May 30, 2008, entitled: "Disclosure Policy." |
| 6. | | OPR-6 dated April 1, 2011, by Inspector ▮▮▮▮▮▮ entitled: "Interview of Forensic Chemist Ken Fuentecilla on March 24, 2011," with 497 pages attached. |
| | 6A | Laboratory Evidence Management Systems Daily Evidence Transaction Report dated February 4, 2011. |
| | 6B | Forensic Chemist Worksheet dated April 14, 2010, written and authenticated by FC Fuentecilla on March 24, 2011. |
| | 6C | Forensic Chemist Worksheet dated April 15, 2010, written and authenticated by FC Fuentecilla on March 24, 2011. |
| | 6D | Forensic Chemist Worksheet dated April 14, 2010, written and authenticated by FC Fuentecilla on March 24, 2011. |
| | 6E | Forensic Chemist Worksheet dated April 14, 2010, written and authenticated by FC Fuentecilla on March 24, 2011. |
| | 6F | Forensic Chemist Worksheet dated April 14, 2010, written and authenticated by FC Fuentecilla on March 24, 2011. |
| | 6G | Forensic Chemist Worksheet dated June 28, 2010, written and authenticated by FC Fuentecilla on March 24, 2011. |
| | 6H | Forensic Chemist Worksheet dated June 28, 2010, written and authenticated by FC Ken Fuentecilla on March 24, 2011. |
| | 6I | Forensic Chemist Worksheet dated June 28, 2010, written and authenticated by FC Fuentecilla on March 24, 2011. |
| | 6J | Forensic Chemist Worksheet dated November 16, 2010, written and authenticated by FC Fuentecilla on March 24, 2011. |
| | 6K | Forensic Chemist Worksheet dated August 25, 2010, written and authenticated by FC Fuentecilla on March 24, 2011. |
| | 6L | Forensic Chemist Worksheet dated September 3, 2010, written and authenticated by FC Fuentecilla on March 24, 2011. |

6M        Forensic Chemist Worksheet dated September 3, 2010, written and
          authenticated by FC Fuentecilla on March 24, 2011.

6N        Forensic Chemist Worksheet dated September 3, 2010, written and
          authenticated by FC Fuentecilla on March 24, 2011.

6O        Forensic Chemist Worksheet dated September 3, 2010, written and
          authenticated by FC Fuentecilla on March 24, 2011.

6P        Forensic Chemist Worksheet dated September 3, 2010, written and
          authenticated by FC Fuentecilla on March 24, 2011.

6Q        Forensic Chemist Worksheet dated September 3, 2010, written and
          authenticated by FC Fuentecilla on March 24, 2011.

6R        Laboratory Operations Manual, Chapter 7302.53, "Forensic
          Chemist Worksheet, DEA-86, and Continuation Worksheet,
          DEA-86a."

6S        Laboratory Operations Manual, Chapter 7005.31, "Disclosure of
          Forensic Analysis Worksheets."

6T        Forensic Chemist Worksheet dated October 27, 2010, written and
          authenticated by FC Fuentecilla on March 24, 2011.

6U        Laboratory Evidence Management System Evidence History
          Report, dated December 3, 2010.

6V        DEA-7 dated May 6, 2010, by Task Force Officer (TFO)███████
          ████, regarding DEA case number ████████, Exhibit #5.

6W        Laboratory Operations Manual, Chapter 7302.41, "Determination
          of Gross Weight."

6X        Email dated October 25, 2010, from ████████████, North
          Central Laboratory Director, to SC ████████, entitled: "Evidence
          out for more than 30 days."

6Y        Laboratory Operations Manual, Chapter 7303.4, "Storage of In-
          Process Evidence."

6Z        Email dated June 23, 2010, from ████████████, North Central
          Laboratory Director, to SC ████████ entitled: "Out for more than
          30 days."

| | |
|---|---|
| 6AA | Laboratory Operations Manual, Chapter 7001.25, "Responsibility of Forensic Chemists, Fingerprint Specialists, and Computer Forensic Examiners." |
| 6BB | DEA Special Agents Manual, Section 6662.22, "Special Agent (SA)/Task Force Officer (TFO)/Diversion Investigator (DI) Responsibilities." |
| 6CC | Laboratory Evidence Management System Evidence History Report, Forensic Chemist Worksheet and analytical data for DEA case number ███████ |
| 6DD | Laboratory Evidence Management System Evidence History Report, Forensic Chemist Worksheet and analytical data for DEA case number ███████ |
| 6EE | Laboratory Evidence Management System Evidence History Report, Forensic Chemist Worksheet and analytical data for DEA case number ███████ |
| 6FF | General Exhibits Query for Methamphetamine Exhibits assigned to Northeast Laboratory Personnel. |
| 6GG | Forensic Chemist Worksheet and analytical data, dated November 16, 2010, written and authenticated by FC Fuentecilla on March 24, 2011. |
| 6HH | Email dated March 23, 2010, from SC ███████, Northeast Laboratory, to Inspector ███████, entitled: "FY 2011 Test for Northeast Laboratory." |
| 6II | DEA Standards of Conduct and Guiding Principles of Professional Responsibility, dated October 22, 2010, signed and authenticated by FC Fuentecilla on March 24, 2011. |
| 7. | OPR-6 dated June 8, 2011, by Inspector ███████ entitled: "Telephonic Interview with Security Officer ███████ on June 1, 2011," with five pages attached. |
| 7A | New York Division Badge History Report for FC Fuentecilla on November 16, 2010. |
| 7B | Pembrooke Occupational Health Medical Review Officer Detail Report dated December 1, 2010, by Dr. ███████, Medical Review Officer. |

8.          OPR-6 dated June 8, 2011, by Inspector ███████, entitled:
            "Information received from Chemist ██████ on June 8, 2011,"
            with two pages attached

8A          Email dated June 10, 2011, from Senior Attorney █████,
            Chief Counsels' Office, to Inspector ███████ OPR,
            entitled: "Information from ███████"